IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Mark K. Arness<br>2824 Ivory Lane<br>Port Republic, MD 20676<br><br>    Petitioner,<br><br>v.<br><br>Secretary James Mattis<br>Department of Defense<br>1000 Defense Pentagon<br>Washington, DC 20301-1000<br><br>    and<br><br>Heather Wilson<br>Secretary of the Air Force<br>1670 Air Force Pentagon<br>Washington, DC 20330-1670<br><br>    Respondents | Civil Action No. 18-1796<br><br>July 31, 18 |

**PETITION FOR WRIT OF MANDAMUS**

Petitioner, Mark. K. Arness, M.D. ("Dr. Arness" or "Petitioner"), through Counsel, moves this Court to Compel the Department of Defense[1] ("DoD) and the United States Air Force ("USAF" or "Air Force") to perform mandatory duties owed to the Petitioner pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C.S. § 701 et seq.

---

[1] The named respondents were not serving in their current capacities for the events discussed herein.

1

On October 6, 2017, following a remand decision from the Air Force Board of Corrections for Military Records ("AFBCMR") which erroneously determined that Petitioner's application did not demonstrate the existence of material error or injustice, the United States Court of Federal Claims entered a judgment dismissing Dr. Arness's case.

Dr. Arness, through Counsel, moves this Honorable Court to issue a *writ of mandamus*.

### I.   FACTUAL BACKGROUND

1. Dr. Arness honorably served in the Air Force, as both an enlisted airman and as an officer, for more than nineteen years and nine months. He enlisted in the Air Force Reserve in May 1983 and was honorably discharged on May 17, 1986. After graduating from the University of Virginia School of Medicine and the Uniformed Services University of the Health Sciences, Dr. Arness re-entered active duty on May 19, 1990. He served as a preventive medicine physician, occupational medicine physician, and as a flight surgeon. In 2002, Dr. Arness was promoted to Lieutenant Colonel and on February 19, 2008, he was awarded the Air Medal for meritorious achievement while participating in aerial flight.

2. At the time of the events giving rise to this case, Dr. Arness served as a flight surgeon on active duty in the Air Force in the rank of Lieutenant Colonel ("Lt Col"). On May 15, 2009, a park caretaker trimming hedges backed into Dr. Arness as he rode his bicycle at a rate of 15-20 miles per hour. Dr. Arness, who wore a helmet, flew over the handlebars and struck his head on the pavement. The collision briefly rendered him unconscious. He was transported via ambulance to a civilian hospital where he was diagnosed with a skull fracture to his left temporal bone, a concussion, and numerous abrasions on his left side, arm, and shoulder. He spent one day in the intensive care unit. Following the collision, Dr. Arness suffered from numerous

debilitating neurological ailments. Dr. Arness's unit commander determined that he sustained his injuries while in the line of duty.

3. Between May 15, 2009, and September 1, 2009, Dr. Arness underwent extensive medical and mental health examinations as part of the Medical Evaluation Board [hereinafter MEB] process which convened on October 2, 2009. The Narrative Summary's findings for the MEB stated, *inter alia*, that Dr. Arness presented for the disqualifying condition of Cognitive Disorder, Not Otherwise Specified, a left parietal scalp hematoma with a fracture of the left temporal bone, a subdural hematoma, concussion with moderate loss of consciousness, and traumatically induced benign paroxysmal positional vertigo. The MEB found that the cognitive disorder did "contribute or may contribute to make the qualifications of the individual for worldwide duty questionable." The Board recommended that Dr. Arness's case be referred to the Informal Physical Evaluation Board [hereinafter IPEB].

4. On November 18, 2009, a military judge sitting as a general court-martial convicted Dr. Arness of fourteen specifications of absence without leave in violation of Article 86, Uniform Code of Military Justice [hereinafter UCMJ]; ten specifications of making a false official statement, in violation of Article 107, UCMJ; and two specifications of conduct unbecoming an officer, in violation of Article 138, UCMJ. The military judge sentenced Petitioner to a reprimand and eleven months confinement. That same date, the MEB was held in abeyance while Dr. Arness served his sentence to confinement.

5. On April 2, 2010, 18 AF/CC notified Dr. Arness of a show-cause action. In response to a letter from Petitioner's military attorney, on May 4, 2010, the 18 AF/CC commander acknowledged that Dr. Arness was also pending a MEB which required dual processing of his case in accordance with AFI 36-3212, Physical Evaluation for Retention, Retirement, and

Separation.    The 18 AF/CC commander informed Dr. Arness of his intent to convene a Board of Inquiry ("BOI") for Petitioner to show cause for his retention in the Air Force.[2]

6.      Dr. Arness was released from confinement on August 7, 2010, and returned to duty the following day.

7.      The BOI convened on August 25, 2010, and recommended discharge with a service characterization of Under Other Than Honorable Conditions ("UOTHC") pursuant to Air Force Instruction ("AFI") 36-3206, *Administrative Discharge Procedures for Commissioned Officers*, para. 3.6.5.   On October 1, 2010, Dr. Arness submitted a memorandum to the show-cause authority in which he challenged the BOI's findings, raised legal errors committed during the appointment process and during the hearing, and requested that he be permitted to retire with a general discharge to preserve his benefits from the Department of Veterans Affairs ("VA"). Ultimately, following consideration by the 18 AF/CC commander in consultation with his legal advisor, the Secretary of the Air Force ("SecAF") directed that Dr. Arness be discharged with a characterization of UOTHC.

8.      On December 3, 2010, Lt Col (Dr.) Thatcher Cardon, Chief, Medical Staff at Fairchild AFB, retracted Dr. Arness's MEB even though he was still under ongoing neuropsychiatric and psychological medical evaluation and therapy for his existing medical conditions.   Neither a hard copy or a digital copy of this retraction has been found.

9.      Mr. Arness was administratively discharged from the Air Force on December 10, 2010, with a service characterization of UOTHC.   He served nineteen years, nine months, and twenty-nine days on active duty.

---

[2] A BOI is an administrative hearing during which a panel of three officers outside the respondent's chain of command considers evidence presented by the government and the respondent regarding whether the respondent should be retained in the Air Force.   AFI 36-3206, *Administrative Discharge Procedures for Commissioned Officers*.

10. On January 11, 2012, Brenda Kurth, Chief, Disability Operations Branch, USAF Physical Disability Division, Directorate of Personnel Program Management, wrote Dr. Arness a letter which stated in pertinent part:

> I am writing to advise you of an error in your release from active duty from the Air Force on 10 Dec 2010, and to provide you an opportunity to apply for correction of that error. You were in disability channels at the time of your release from active duty. You were erroneously discharged prior to the finalization of your disability case. Your administrative separation package and your disability case should both have been forwarded to the Secretary of the Air Force Personnel Council for adjudication.
>
> We believe you should have given the opportunity to apply to the Air Force Board for Correction of Military Records for the opportunity to have this error corrected.

11. Dr. Arness petitioned the AFBCMR on February 2, 2012. He did so *pro se*. He requested that the AFBCMR revoke his involuntary separation and void the BOI's recommendation to characterize his discharge as UOTHC.

12. On January 14, 2013, Dr. Arness received an advisory opinion from the Secretary of the Air Force Personnel Council ("SAFPC") stating that the Board concluded that he was appropriately discharged administratively without specific action on his medical condition of Cognitive Disorder under the Military Disability Evaluation System, that his case was "closed", and that his case should not have been forwarded to the SAFPC for adjudication. The advisory opinion concluded, "even if the applicant's medical condition had been deemed to be unfitting and an MEB had been indicated, the board concluded that the administrative discharge would still have been appropriate."

13. On January 28, 2013, Dr. Arness responded to the advisory opinion and he did so *pro se*. He revised his original petition to request, *inter alia*, revocation of his UOTHC discharge; a change in his service characterization to General (under honorable conditions) should the

AFBMCR find that his nearly twenty years of service did not warrant an Honorable discharge; a medical retirement reflecting more than twenty-four years of total service with an Air Force; a medical disability rating of not less than 60% and up to 75% maximum effective after his separation date; and amendment of the narrative reason for separation.

14.     On August 28, 2013, the AFBCMR notified Dr. Arness of the denial of his application because it "did not demonstrate the existence of material error or injustice."  The AFBCMR found that the 92 Medical Group properly retracted the MEB case on December 3, 2010, when it determined that he did not have an unfitting condition.  The AFBCMR also found that even if the likely outcome of Dr. Arness's cognitive disorder had been deemed unfitting at the time of his discharge, there was no apparent causal relationship between the unfitting condition and his misconduct.  Furthermore, SAFPC determined that the execution of the administrative action would have been appropriate even under dual action processing because of the determination that Dr. Arness's cognitive disorder was unfitting at the time of his discharge.   The AFBCMR concluded that the administrative action would have been appropriate, such that the "retrospective dual action consideration corrects the error originally made. . . ."  Finally, the AFBCMR also concluded that Dr. Arness's allegations of legal error at the BOI were without merit.

15.     On October 15, 2013, Dr. Arness petitioned the Air Force Discharge Review Board ("AFDRB").  Once again, he did so *pro se*.  He sought correction of his military service discharge records for several reasons, including that he suffered from then-existing post-combat psychiatric health problems, including a 2007 diagnosis from a physician at Fairchild AFB that he was "probably delusional; paranoid . . . possibly psychotic," as well as the aforementioned medical conditions; errors committed in both the MEB and BOI processes, including the decision

of the BOI Legal Advisor to prohibit any and all evidence from the MEB which deprived Dr. Arness of an affirmative defense to some of the allegations at the BOI and denied him the opportunity to present evidence of mitigating and extenuating circumstances; violations of relevant portions of AFIs 36-3206 and 36-3212 at his MEB and BOI; diagnoses of multiple disabling injuries, including sequelae of post-traumatic brain injury, visual field defect of the right eye, vertigo, persistent disequilibrium disorder with prominent ocular nystagmus, cognitive disorder not otherwise specified, major depressive disorder, probable PTSD, occupational stress, and exacerbation of bilateral ankle pain during confinement with chronic arthropathy; evidence of Dr. Arness's November 27, 2017, duty limitation of psychologically unfit was excluded and/or ignored; his mental health conditions prior to the charged conduct affected his duty performance and judgment and contributed to the charged misconduct; and the VA ratings proved that significantly disabling medical conditions existed at the time of his discharge.  Dr. Arness requested that the DRB upgrade his discharge to at least General Under Honorable Conditions and amend the narrative reason for his separation.

16.     On October 23, 2013, the AFDRB notified Dr. Arness that because he had an active case before the AFBCMR for the same issues and that the AFBCMR was a higher authority, he could not file a request with the AFDRB.  Consequently, the AFDRB took no action on his petition.

17.     On February 7, 2014, the AFBCMR Executive Director informed Petitioner that the AFBCMR had denied his September 30, 2013, and October 25, 2013, requests for reconsideration.

18.     On March 6, 2014, Susan R. Ayala-Wright, Deputy Director, Intake Operations of the Air Force Review Boards Agency notified Dr. Arness that the AFDRB could not process his petition

because the AFBCMR had already reviewed his case and that the AFBCMR was the highest level of appellate review.

19.     Following the March 6, 2014, above communication, Dr. Arness retained counsel to represent him before the AFDRB.   On July 15, 2014, his counsel responded to the October 23, 2013, letter from Mr. Ray Diaz of the Air Force Review Boards Agency which stated that Dr. Arness was not entitled to have his case reviewed by the AFDRB because he had a case pending review by the AFBCMR.[3]   Petitioner's counsel advised Mr. Diaz that his position was incorrect because Dr. Arness had requested that the AFBCMR set aside his discharge and grant him a medical discharge and that these remedies are not within the AFDRB's purview.   Dr. Arness's counsel requested reconsideration of the AFDRB's decision and further advised Mr. Diaz:

> Mr. Arness's petition to the AFBCMR was very succinct in its request, and he did not request any relief that could have been granted by the AFDRB.  As such, his petition to the AFDRB is not pre-empted by his petition [to] the AFBCMR.  I am aware that the AFBCMR is the highest level of administrative review in the Air Force.  I am also aware that if one requests the AFBCMR to upgrade a discharge it may have the effect of barring review by the AFDRB.  However, in this case that is not what happened.  Mr. Arness has not sought review of the characterization of his discharge by the administrative agency.  While it may have been prudent for Mr. Arness to petition the AFDRB prior to going to the AFBCMR, he was not required to do so.  Mr. Arness is not a lawyer and did what was reasonable under the circumstances.

20.     On July 29, 2014, Ms. Ayala-Wright responded to the above letter.   She re-stated the erroneous position that Dr. Arness had requested a discharge upgrade from the AFBCMR.   On August 11, 2014, Dr. Arness's counsel responded to Mr. Ayala-Wright's letter and reiterated that

---

[3] While the letter from Dr. Arness's counsel to Mr. Diaz was dated July 15, 2014, the Air Force Review Boards Agency received it on July 21, 2014.   That office stamped the date "July 21, 2014" on the letter and subsequently referred to that letter by the date it was received rather than the date it was sent.

Mr. Arness is entitled to review by the AFDRB because he did not request a discharge upgrade from the AFBCMR.

21.     On December 11, 2014, after not receiving a reply to his August letter, Dr. Arness's counsel wrote Ms. Ayala-Wright and requested a response.

22.     On June 15, 2015, the VA modified Dr. Arness's disability percentage for post-traumatic stress disorder ("PTSD") from 50% to 70%.  On April 14, 2016, the VA awarded Mr. Arness a disability rating of 100% from the previous rating of 70% for PTSD with persistent depressive disorder.  The VA also awarded Dr. Arness a disability rating of 20% from the previous rating of 10% for superior quadrantopsia for both eyes.  He clearly suffered from disabling conditions for which an MEB was appropriate and necessary for proper disposition of his case and that his conditions rendered him unfit for service.

23.     On March 28, 2016, Dr. Arness, by and through counsel, filed a complaint against the United States in the United States Court of Federal Claims.  On August 23, 2016, the court, pursuant to a motion by the defendant, remanded the case to the AFBCMR to consider Dr. Arness' claim that the AFBCMR failed to properly consider the status of his medical disability at the time he underwent discharge proceedings from the Air Force and to consider any other matters presented in writing by him regarding his retirement.

24.     On September 9, 2016, Dr. Arness, through counsel, submitted a letter to the AFBCMR which incorporated the previously filed complaint and presented additional matters for consideration, including the aforementioned VA ratings adjustments, medical evaluations, and a Narrative Summary which were prepared for Mr. Arness' MEB but were prohibited from being entered into evidence and considered by the BOI.  The medical evaluations and Narrative Summary demonstrate that Dr. Arness suffered from unfitting conditions which qualify him for

disability retirement compensation and include other medical conditions that were wrongfully ignored or disregarded in the administrative discharge proceeding.

25. After the case was remanded, the AFBCMR requested an advisory opinion from the Air Force Personnel Center regarding whether Petitioner would have been able to retire from the Air Force due to his pending medical disability case and other matters. The original advisory opinion did not sufficiently address the issue and the AFBCMR requested a revised advisory opinion. A change in the AFBCMR's governing statute following the original adjudication of Dr. Arness's matter necessitated an additional advisory opinion from a clinical psychologist or psychiatrist.

26. On February 9, 2017, the AFBCMR forwarded the aforementioned advisory opinions, three additional advisory opinions, a Secretary of Defense memorandum with guidance on PTSD cases, and a legal review from the Air Force Personnel Center to Dr. Arness's counsel.

27. On March 3, 2017, Dr. Arness's counsel submitted comments on the advisory opinions, as well as matters personally asserted by Petitioner. These comments addressed errors in the advisory opinion and methodology of the AFBCMR Psychiatric Advisor, including the omission of critical findings and asserted that the advisory opinion by Floyd Dwiggins, Chief, Disability Operations Branch, was inherently flawed because it made exceedingly broad generalizations without considering the specifics of Dr. Arness's case. The comments also noted that no hard or digital copy of the request to cancel the MEB exists, but that if it did, it was invalid because it was based on the erroneous October 2010 psychological evaluation and that the administrative review failed to consider Dr. Arness's entire medical record dating back to 2006. Finally, Petitioner requested that the AFBCMR grant him a medical retirement based on a September 3,

2014, memo from the Secretary of Defense to the service Boards for Correction of Military Records regarding liberal consideration in matters where PTSD or PTSD-related symptoms exist.

28. In an August 7, 2017, Addendum to the Record of Proceedings, the Chief Examiner, AFBCMR, denied Dr. Arness's application and determined that the evidence presented did not demonstrate the existence of material error or injustice.

29. On October 6, 2017, the Court of Federal Claims entered a judgment which dismissed Dr. Arness's case.

## II. JURISDICTION & VENUE

30. This District Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1361, which states that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

31. Venue is properly laid in the District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(e)(1) as Defendants are Agencies of the United States residing in the District of Columbia.

## III. STANDARD OF REVIEW

A *writ of mandamus* will only be granted when essential to the interests of justice. *See Starnes v. McGuire*, 512 F.2d 918, 929 (D.C. Cir. 1974) (en banc); *Haneke v. Secretary of HEW*, 535 F.2d 1291, 1296 (D.C. Cir. 1976); *In Re Tripati*, 836 F.2d 1406, 1407 (D.C. Cir. 1988). Federal district courts have authority to issue *writs of mandamus* pursuant to 28 U.S.C. § 1361, at the discretion of the Court. *National Wildlife Federation v. United States*, 626 F.2d 917, 923 (D.C. Cir. 1980). Mandamus generally will not issue unless there is a clear right in the Petitioner to the relief sought, a plainly defined and non-discretionary duty on the part of the

defendant to honor that right, and no other adequate remedy, either judicial or administrative, available. *Northern States Power Co. V. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997).

The requirement of a clear duty to act has been interpreted to mean that the duty of the federal officer sued must be "a clear non-discretionary duty." *Pittston Coal Group v. Sebben*, 109 S. Ct. 414, 424 (1988); *Welch v. Donovan,* 551 F. Supp.809 (D.D.C. 1982). "It is well settled that a *writ of mandamus* is not available to compel discretionary acts." *Cox v. Secretary of Labor*, 739 F. Supp. 28, 30 (D.D.C. 1990) (citations omitted).

### IV.  ARGUMENT

#### A. The AFDRB Owes a Clear, Non-discretionary Duty to Petitioner

The AFDRB's decision denying consideration of Petitioner's application is non-discretionary, and Dr. Arness's petition to that Board merited review.   First, 10 U.S.C. §§ 1552 and 1553 do not require Dr. Arness to petition the AFDRB prior to seeking redress by the AFBCMR.   Similarly, neither Department of Defense ("DoD") Directive 1332.41 or DoD Instruction 1332.28 require Dr. Arness to petition the AFDRB before the AFBCMR.   In other words, a petition to the AFDRB is not pre-empted by an application to the AFBCMR.   As such, the AFDRB owes a clear, non-discretionary duty to Petitioner to review his request for relief.

Here, the AFDRB erroneously stated that it could not entertain Dr. Arness's petition for relief because he had already sought redress from the AFBCMR.   Moreover, the AFDRB misstated the relief sought by Dr. Arness and conflated his AFBCMR application with his petition to the AFDRB.

#### B. No Other Adequate Remedy is Available

The AFDRB's erroneous failure to review Dr. Arness's petition is a barrier to a just remedy.   Given Petitioner's complex and disabling diagnoses, the multiple legal errors

committed during the BOI, and the invalid medical and other advisory opinions solicited during the Court of Federal Claims' remand of the case to the AFBCMR, the issuance of a *Writ of Mandamus* to the AFDRB for that agency's substantive review of Petitioner's request for relief is essential to justice.

## V. CONCLUSION

Petitioner Dr. Arness, through Counsel, respectfully moves this court to compel the agency to:

1) Assume jurisdiction of this cause;

2) Issue a *Writ of Mandamus* to compel the AFDRB to immediately fulfill the following non-discretionary duties to Petitioner:

   a) Conduct a de novo review of the petition for propriety and equity;

   b) Grant the requested relief; and

   c) Provide attorney's fees and costs related to this *Writ*.

WHEREFORE, Petitioner, by and through Counsel, in consideration of the foregoing, prays the above relief be Granted.

                    Respectfully Submitted,

                    /s/ William E. Cassara
                    William E. Cassara
                    918 Hunting Horn Way
                    Evans, GA 30809
                    O: (706) 860-5769
                    F:  (706) 868-5022

                    **bill@courtmartial.com**